<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VASWANI, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NAGACHETAN BANGALORE MANJUNATHAMURTHY; UDAY SHANKAR; FAIRMACS GROUP; FAIRMACS SHIPPING & TRANSPORT SERVICES, PVT, LTD; DRAFT CARGOWAY INDIA, PVT, LTD.; SREENATH RAJENDHRANATH; RADHIKA RAO; LUCIDIENT LIMITED; VISIOLUCID TECHNOSOFT, PVT, LTD.; VISIO INGENII, LTD; NANJUNDAPPA MADHUSUDHAN; POWERFIRM VENTURES INTERNATIONAL, INC.; JOANN CASTILLO; and SUNIL BUVA, <br><br> *Defendants*. | Civil No.: 20-cv-20288 (KSH) (CLW) <br><br><br><br> <u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

This lawsuit is about a purported fraudulent scheme involving the sale of protective personal equipment ("PPE"), specifically 60,000 boxes of gloves, during the COVID-19 pandemic. In the complaint, plaintiff Vaswani, Inc. alleges that it paid $450,000 for PPE that it never received, and asserts claims against more than a dozen individual and institutional defendants for breach of contract, piercing of the corporate veil, conversion, consumer fraud, fraud and conspiracy to commit fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d) ("RICO") and New Jersey's Commercial Code.

According to the complaint, the scheme was comprised of various actors as follows. In July 2020, a third party introduced Vaswani to individual defendant Udaya Shankar, who worked

1

for institutional defendants owned and/or operated by individual defendant Sreenath Rajendhranath: Fairmacs Group, Fairmacs Shipping & Transport Services, Pvt. Ltd., and Draft Cargoways India, Pvt. Ltd. (collectively, with Shankar and Rajendhranath, the "moving defendants"). The moving defendants communicated directly with Vaswani through Shankar to facilitate its PPE order.

After Vaswani placed its order and released the $450,000 payment, it discovered that other individuals and institutions were involved in the transaction. For example, Vaswani learned that the PPE had not been procured by the moving defendants but, rather, by institutional defendants Lucidient Limited, Visiolucid Technosoft, Pvt. Ltd., and Visio Ingenii, Ltd., which are owned and/or operated by individual defendants Nagachetan Bangalore Manjunathamurthy, Radhika Rao, and Nanjundappa Madhusudhan. Another company, institutional defendant Powerfirm Ventures International, Inc., held Vaswani's remitted funds. When Vaswani had not received the ordered PPE in December 2020, it engaged in negotiations with Powerfirm's director, individual defendant Joann Castillo, for the return of its $450,000 payment. However, Vaswani later learned that another individual, defendant Sunil Buva, was at the center of the relevant transaction. (Buva, with the other defendants described in this paragraph, are collectively referred to herein as the "non-appearing defendants").[1] Vaswani never received repayment, and this suit followed.

Presently before the Court is the moving defendants' motion to dismiss (D.E. 20), arguing that all the claims against them should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2), or alternatively that the RICO claims should be dismissed under Rules

---

[1] Default was entered against non-appearing defendants Manjunathamurthy, Buva, Castillo, Lucidient, Visolucid Technosoft, Visio Ingenii, and Powerfirm on June 10, 2021. (*See* D.E. 22.)

2

8(a), 9(b), and 12(b)(6). For the reasons set forth below, the motion is denied as to the threshold jurisdictional challenge but granted as to the RICO causes of action. Accordingly, with the exception of its RICO claims, Vaswani's lawsuit will proceed in this Court against all defendants.

II.     Background

    a. Facts

The facts are gleaned from the complaint (D.E. 1). Plaintiff Vaswani is a Delaware corporation with its principal place of business in New Jersey. (Compl. ¶ 3.) Moving defendants Fairmacs Group, Fairmacs Shipping, and Draft Cargoways are based in India, and Rajendhranath and Shankar are both residents and citizens of India.[2] (*Id.* ¶¶ 7-10.)

Vaswani designs, manufactures, and installs furniture, fixtures, and displays for retail stores throughout the United States. (*Id.* ¶ 14.) It found itself in need of large quantities of PPE amidst the COVID-19 pandemic and in July 2020 was introduced to Shankar, who represented that he and Fairmacs Group could acquire the needed PPE. (*Id.* ¶¶ 15-17.) He proceeded to forward Vaswani "numerous offers and examples of product" available for sale. (*Id.* ¶ 18.)

The next month, Vaswani decided to purchase 60,000 boxes of gloves from Vaswani at a total cost of $450,000. (*Id.* ¶ 19.) Shankar, who facilitated the sale, informed Vaswani that 30% of the funds (or $135,000) would be due on the order date and the remaining 70% (or $315,000) would be due upon verification of quality and confirmation of shipment readiness. (*Id.* ¶ 20.) On August 20, 2020, he sent Vaswani wiring instructions for the initial 30% payment, which

---

[2] The complaint alleges that: (i) Manjunathamurthy is a citizen of India with residences in India and England (*id.* ¶ 4); (ii) Rao resides in England (*id.* ¶ 5); (iii) Buva resides in India (*id.* ¶ 13); and (iv) Powerfirm is a Philippines entity (*id.* ¶ 11). It is silent as to the citizenship or residence of the remaining non-appearing defendants.

3

provided that the funds would be sent to non-appearing defendant Lucidient. (*Id.* ¶ 21.) The next day, Vaswani wired a "test amount" of $100 to Lucidient; when Shankar confirmed receipt, it proceeded to wire the remaining $134,900. (*Id.* ¶ 22.)

On September 8, 2020, Shankar informed Vaswani that the PPE had been manufactured and the "SGS inspection" process was underway.[3] (*Id.* ¶¶ 23-24.) However, he later indicated that the inspection process was delayed because the "inspectors were backlogged." (*Id.* ¶ 24.) On October 8, 2020, he forwarded Vaswani an SGS certificate indicating that the PPE was ready for shipment. (*Id.* ¶ 25.) Approximately two weeks later, Vaswani wired Lucidient the remaining $315,000 at Shankar's instruction. (*Id.* ¶ 26.)

On November 2, 2020, Shankar informed Vaswani that the PPE had been loaded onto the cargo ship. (*Id.* ¶ 27.) However, he later indicated that the ship was unable to leave the port due to a typhoon. (*Id.* ¶ 28.) A few weeks later, on November 18, he provided Vaswani with a bill of lading for the PPE, which was missing a number of "necessary details," including the container number. (*Id.* ¶ 29.) After "press[ing] for details," Vaswani was contacted by another Fairmacs employee named Arun, who indicated that he would provide a replacement bill of lading because Shankar had "COVID issues." (*Id.* ¶ 30.) Arun sent the replacement bill of lading on November 21, which again was missing certain information. (*Id.*)

On November 24, 2020, Vaswani became suspicious and contacted SGS directly. (*Id.* ¶ 31.) Two days later, SGS informed Vaswani that the inspection certificate it received from Shankar was "fraudulent and of no value." (*Id.* ¶ 32.) When Vaswani confronted him, he stated that he was merely an intermediary and that the PPE had been procured by Lucidient through its

---

[3] "SGS" appears to be an inspection company. (*See id.* ¶ 31.)

4

director, non-appearing defendant Manjunathamurthy.[4]  (*Id.* ¶¶ 33-34.)  Manjunathamurthy promised to void the transaction and return all wired funds to Vaswani with the cooperation of non-appearing defendant Powerfirm, which was "the holder of the funds."  (*Id.* ¶ 35)

In early December 2020, Vaswani engaged in "multiple discussions, texts and emails" with Powefirm's director, non-appearing defendant Castillo, who admitted that the SGS certificate provided by Shankar was false.  (*Id.* ¶ 36.)  Vaswani, Castillo, and Manjunathamurthy agreed to "enter into a document which would cause the return of Vaswani's funds."  (*Id.* ¶ 37.)  However, Manjunathamurthy later informed Vaswani that another individual, non-appearing defendant Sunil Buva, was "the person who was handling the whole operation."  (*Id.* ¶¶ 37-38.)

### b. Procedural History

Vaswani never received the funds and filed the instant lawsuit on December 24, 2020, alleging causes of action for breach of contract (Count I), piercing of the corporate veil (Count II), conversion (Count III), consumer fraud (Count IV), violations of New Jersey's commercial code (Count V), fraud and conspiracy to commit fraud (Count VI), violations of RICO (Count VII), and conspiracy to violate RICO (Count VIII).  (D.E. 1.)  The moving defendants answered the complaint on February 19, 2021.  (D.E. 5.)[5]

---

[4] According to the complaint, "further research" revealed that Manjunathamurthy "was the center of fraudulent PPE transactions" conducted through Lucidient and his other business entities, Visolucid Technosoft and Visio Ingenii, with the assistance of non-appearing defendants Rao and Madjusudhan.  (*Id.* ¶ 34.)

[5] Though not raised in opposition, the Court recognizes that the moving defendants answered the complaint before filing the instant motion.  Rule 12(b) states that a motion to dismiss for lack of personal jurisdiction "must be made before pleading if a responsive pleading is allowed." However, courts in this Circuit have allowed defendants to file a motion to dismiss for lack of personal jurisdiction after filing an answer so long as they raised it as an affirmative defense in their answer.  *See Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 580 (D.N.J. 2015) (recognizing that "courts in the Third Circuit have generally been unwilling to deny such motions as untimely when a defendant included the same grounds as an affirmative defense in its

Following motion practice regarding alternative service of process on the non-appearing defendants (*see* D.E. 10, 13), the moving defendants filed the instant motion (D.E. 20) arguing that the claims against them should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2), or alternatively that the RICO claims should be dismissed under Rules 8(a), 9(b), and 12(b)(6).[6] They rely on their brief (D.E. 20-1, Mov. Br.) along with declarations of Draft Cargoways' Accounts Officer, Sridharan Balaji (D.E. 20-2, Balaji Decl.) and defendants Rajendhranath (D.E. 20-3, Rajendhranath Decl.) and Shankar (D.E. 20-6, Shankar Decl.). In opposition Vaswani relies on its brief (D.E. 33) and the declaration of Pravin Donatus (D.E. 33-1, Donatus Decl.), one of its Project Coordinators who predominantly conversed with Shankar. In reply, the moving defendants rely on a brief (D.E. 36, Reply Br.) and a declaration of counsel (D.E. 36-1, Pallas Decl.).[7]

### III. Discussion

#### A. Motion to Dismiss for Lack of Personal Jurisdiction

##### a. Standard

When a defendant challenges personal jurisdiction, it is the plaintiff's burden to prove, by a preponderance of the evidence and with affidavits or other competent evidence, facts sufficient

---

answer"). Here, the moving defendants raised personal jurisdiction as an affirmative defense in their answer. (D.E. 5, Answer ¶ 136.) Accordingly, the Court will not deny the motion as untimely and will proceed to address it on the merits.

[6] The moving defendants moved (D.E. 27) for a stay of discovery pending resolution of the instant motion, which Magistrate Judge Waldor denied (D.E. 28). Although they appealed Judge Waldor's denial (*see* D.E. 29), this opinion and accompanying order render the appeal moot.

[7] The moving defendants also seek dismissal of Fairmacs Group on grounds that it is "not an actual corporate entity in existence." (Mov Br. at 21; Reply Br. at 9.) Discovery can shed further light on the corporate status of Fairmacs Group, and the parties are free to file a stipulation to that effect.

to establish personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). If the district court does not hold an evidentiary hearing on the motion to dismiss, "the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). If the plaintiff establishes a *prima facie* case of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A federal court may exercise personal jurisdiction over nonresident defendants "to the extent allowed under the law of the forum state." *See Metcalfe*, 566 F.3d at 330. In New Jersey, the long-arm statute provides for jurisdiction co-extensive with the limits of due process under the Fourteenth Amendment. *Carterer Sav. Bank*, 954 F.2d at 144-45. Due process requires that the defendant have sufficient minimum contacts with New Jersey such that maintaining the suit "does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction comes in two varieties: general, meaning the defendant is subject to suit in the forum state for all causes of action; and specific, meaning the defendant is subject to suit in the forum state because there is a sufficient connection between the defendant's contacts with the forum and the asserted causes of action. *See O'Connor*, 496 F.3d at 317. General jurisdiction requires continuous and systematic contacts with the forum state, while "[s]pecific

jurisdiction permits the exercise of personal jurisdiction over [a] non-resident defendant only if the plaintiff's claims 'arise out of or relate to' the defendant's forum contacts." *Miller Yacht*, 384 F.3d at 101.

Vaswani concedes the absence of general jurisdiction and instead argues that specific jurisdiction exists because its causes of action arise out of the moving defendants' contacts with New Jersey. Specific jurisdiction is analyzed using a three-part inquiry: (1) whether the defendants "purposefully directed" their activities at the forum; (2) whether the litigation "arise[s] out of or relate[s] to" at least one such activity; and (3) if both of the foregoing requirements are met, whether exercising jurisdiction "comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citations and internal quotation marks omitted; final alteration in original). The first two elements address whether a defendant has sufficient "minimum contacts" to warrant jurisdiction; "[t]he existence of minimum contacts makes jurisdiction presumptively constitutional, and 'the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 324 (quoting *Burger King Corp.*, 471 U.S. at 477). Courts consider several factors when analyzing jurisdictional reasonableness, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," and "[t]he procedural and substantive interests of other nations." *Id.* (internal citations and quotations omitted).

The parties do not appear to dispute for purposes of the instant motion that all of Vaswani's causes of actions arise from its contractual or other purported business relationship with the moving defendants. It thus bears noting that the existence of "a contract alone does not

8

automatically establish sufficient minimum contact in the other party's home forum." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993); *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). When analyzing specific jurisdiction in the context of a contractual dispute, the Court must consider "not only the contract but also 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealings.'" *Id.* (quoting *Burger King*, 471 U.S. at 463). Mere "informational communications in furtherance of" a contract between a resident and non-resident "do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction." *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993).

### b. Vaswani has Established a *Prima Facie* Case of Jurisdiction

The moving defendants argue that their only connection to New Jersey was their contractual or other purported business relationship with Vaswani, which they did not initiate. (Mov. Br. at 10-13.) They contend in their briefing and supporting declarations that the complaint contains no allegation that they: (i) solicited Vaswani's business in New Jersey (Shankar Decl. ¶¶ 2, 8); (ii) travelled to New Jersey in furtherance of the contract with Vaswani, let alone had any physical presence in the state (*id.* ¶ 10; Balaji Decl. ¶ 5-9; Rajendhranath Decl. ¶¶ 7-10, 14); (iii) performed any part of the contract or committed any wrongful acts in the performance of the contract in New Jersey (Balaji ¶ Decl. 11; Rajendhranath Decl. ¶ 15); or (iv) knowingly placed any telephone calls to Vaswani or its representatives in New Jersey (Shankar Decl. ¶ 9). (*See* Mov. Br. at 11.) They do acknowledge that they engaged in email communications with Vaswani and that the signature block of its representatives contained a New Jersey address. But they argue that Vaswani initiated the communications and requested shipment of the PPE to California, which "undercuts any argument . . . that [they] *were targeting*

9

*the State of New Jersey.*" (*Id.* at 12.) In opposition, Vaswani contends that complaint adequately alleges that the moving defendants "contracted with [it] to provide goods to New Jersey, engaged in extensive communications directed at New Jersey, and directed misrepresentations on behalf of themselves and, as agent for the manufacturer, to New Jersey." (Opp. Br. at 5-7.)

The declaration of Pravin Donatus and the exhibits attached to it—which consist of emails from July through December 2020 and certain attachments (D.E. 33-4, Donatus Decl. Ex. C),[8] as well as Whatsapp messages between Donatus and Shankar from July through November 2020 (D.E. 33-2, Donatus Decl. Ex. A)—together provide further detail about the parties' relationship. As alleged in the complaint, a third party connected Donatus and Shankar via email in July 2020 to facilitate the procurement of certain PPE for Vaswani. (Donatus Decl. Ex. C at 1.) While the moving defendants may not have initiated the business transaction, it cannot reasonably be said that they did not "solicit any business from Vaswani." (Shankar Decl. ¶ 8.) To the contrary, Donatus and Shankar engaged in extensive communications via email, Whatsapp, and telephone in the months that followed regarding all aspects of the procurement process. (Donatus Decl. Exs. A, C; Shankar Decl. ¶ 9.) For example, Shankar: (i) provided estimate costs and shipping times (Donatus Decl. Ex. C at 2, 4); (ii) offered to send Donatus samples of the desired PPE (Donatus Decl. Ex. A at 1); (iii) facilitated wire transfers between Vaswani and Lucidient (Donatus Decl. Ex. C at 13-14); (iv) provided Vaswani with documentation regarding its order and answered questions regarding same (*id.* at 15-17); (v) facilitated the SGS investigation process, provided Vaswani with periodic updates regarding the

---

[8] A number of these emails are also attached to the Shankar declaration as Exhibits A (D.E. 20-7) and B (D.E. 20-8).

investigation, and sent it the accompanying certifications (*id.* at 19-22); and (vi) provided shipment status updates (Donatus Decl. Ex. A at 32).

It is apparent from these communications that the moving defendants, through Shankar, were involved in all stages of the PPE procurement process. The critical inquiry, then, is whether they purposefully directed their activities at New Jersey. The Court finds that they did.

The parties' communications, bills of lading, and purchase orders establish that the final destination for the desired PPE was an address in Anaheim, California. (Donatus Decl. Ex. C. at 1, 28, 31; Pallas Decl. Ex. A.) However, at various times between October 26 and 27, 2020, Donatus and Shankar engaged in the following exchange regarding the shipment of PPE samples to New Jersey:

> [Donatus]: Shankar three things
> 1. Need ETD and ETA of vessel sailing
> 2. **The sample that was sent is not delivered. The tracking shows it was delivered but no one in my office received it.. can you send another sample box ASAP.. fastest shipment possible**..
> 3. We are working with the governmental office on a bid. To start with I think they might order 60,000 boxes. Can you please let me know the size splits you have of the 250k boxes that you mentioned. They would need all the gloves in two weeks so we have to complete SGS and airship in two weeks..please let me know if this timeframe is possible?
>
> [Donatus]: Only if the time frame of 2weeks is possible we might place the order**. If you think you won't be able to get to NJ in two weeks then we can't take this order**.
>
> [Donatus]: Please check and confirm
>
> [Donatus]: **Order will be place only under the condition that it will be in NJ in two weeks**.
>
> [Shankar]: **Possible to get the sgs done and to airlift . However will check and confirm**
>
> . . .
>
> [Donatus]: Do you have this in stock?

11

> [Shankar]: XL order is full for next two months
>
> [Shankar]: Can make choice of split
>
> [Shankar]: But usually the purchase goes on equal ratio
>
> [Donatus]: **Ok. Can this be delivered to NJ in two weeks...**
>
> [Shankar]: **By air ?**
>
> [Shankar]: **Cargo can be moved in a day**
>
> [Donatus]: **Yes..**
>
> [Donatus]: **Ok great**
>
> . . .
>
> [Donatus]: **Shankar were you able to ship extra sample?**
>
> [Shankar]: **Booked today**

(Donatus Decl. Ex. A at 28-29.) The record also contains a DXL shipment tracker and receipt, which demonstrate that Powerfirm shipped three boxes of gloves to Vaswani in Edison, New Jersey on October 16, 2020.[9] (Donatus Decl. Ex. C at 37-38.) Although the record casts doubt on whether Vaswani actually received this shipment, it is clear that, at the very least, Shankar received instruction to ship product to New Jersey—and, thus, knew or should have known that Donatus' office was located in New Jersey—and the record shows the Shankar told Vaswani that that he booked such a shipment.

Furthermore, Shankar's declaration that he lacked knowledge regarding the location of Vaswani representatives during their communications is belied by the emails of Donatus and

---

[9] It is unclear from the record whether this is the shipment that Donatus claims was not delivered as of October 26, 2020. (*See* Donatus Decl. Ex. A at 28 ("The sample that was sent is not delivered. The tracking shows it was delivered but no one in my office received it . . .")).

other Vaswani representatives included in the record, which display a signature block bearing an Edison, New Jersey address. (*Compare* Shankar Decl. ¶ 9 *with* Donatus Decl. Ex. C at 5-8, 11, 13-14, 16-17, 21-27.) Additionally, in one of Donatus' first emails to Shankar he indicated that "Vaswani, Inc." would be the "Cosignee" for the PPE order and provided an Edison, New Jersey address. (Donatus Decl. Ex. C at 1.) Unsurprisingly, the purportedly fraudulent bills of lading sent by Shankar listed the Edison, New Jersey "Cosignee" address alongside the final destination address in California. (*Id.* at 28, 31.)

In sum, the Court is satisfied that affidavits and other competent evidence in the record demonstrate that the moving defendants purposefully directed their activities forming the basis of this lawsuit at New Jersey.[10] Accordingly, Vaswani has established a *prima facie* case of jurisdiction.

### c. The Moving Defendants have Failed to Present a Compelling Case of Unreasonableness

Having determined that jurisdiction is "presumptively constitutional," the burden now shifts to the moving defendants to present a "compelling case" that other considerations would

---

[10] On balance, the cases cited by the moving defendants in support of their motion are distinguishable. *See, e.g.*, *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (affirming district court's finding that specific personal jurisdiction was lacking over defendant-buyer in supply agreement dispute, where facts demonstrated that defendant was merely a "passive buyer" of the plaintiff's product and thus did not purposefully avail itself of the forum); *Siegmeister v. Benford*, 2017 WL 2399573, at *4 (D.N.J. June 1, 2017) (Vazquez, J.) (no specific jurisdiction where defendants, among other things, did not engage "in extensive post-sale contacts" with plaintiffs in the forum); *Team First Consulting, LLC v. Hangliter*, 2007 WL 1302440, at *5 (D.N.J. Apr. 27, 2007) (Debevoise, J.) (specific jurisdiction lacking where "nothing in the Complaint indicate[d] that anything other than communications related to the alleged contract were sent to and from New Jersey"); *see also Magill v. Elysian Glob. Corp.*, 2021 WL 1221064, at *7 (D.N.J. Apr. 1, 2021) (Hillman, J.) (addressing specific jurisdiction inquiry in employment contract dispute).

13

render jurisdictional unreasonable. *See O'Connor,* 496 F.3d at 324 (jurisdictional reasonableness factors include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," and "[t]he procedural and substantive interests of other nations").

Here, the moving defendants have not provided an analysis of the requisite factors set forth in *O'Connor*. Notwithstanding, the Court is satisfied that they cannot present a "compelling case." Although the moving defendants may be inconvenienced by overseas litigation, the parties' joint discovery plan reveals that paper discovery is well underway, with party and non-party depositions anticipated to be completed over the next two months. (*See* D.E. 44.) The most efficient and effective resolution of this controversy, therefore, would be achieved by allowing it to proceed in this Court. Furthermore, New Jersey has a significant interest in adjudicating this matter, which involves a purported fraud committed on one of its citizens. *See Carteret Sav. Bank*, 954 F.2d at 150 (recognizing that New Jersey would have a "significant interest in adjudicating fraudulent misrepresentations occurring within its borders"). This last is true, even in the arguably "borderless" terrain of online transactions, given the volume of purposefully directed communications between the moving defendants and Vaswani and their promise to ship product to New Jersey in order to facilitate the transaction.

The Court thus finds that exercising jurisdiction comports with fair play and substantial justice. The moving defendants' motion to dismiss on jurisdictional grounds is denied.[11]

---

[11] Having determined that it has specific jurisdiction over the moving defendants, the Court need conduct an analysis under *Calder v. Jones*, 465 U.S. 783 (1984). *See Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) (*Calder* effects test may apply where defendant's contacts with forum alone are "too small to comport with the requirements of due process").

14

### B. Motion to Dismiss RICO Causes of Action

The moving defendants next argue that the RICO claims (Counts VII and VIII) should be dismissed for failure to state a claim pursuant to Rules 8(a), 9(b), and 12(b)(6). As a general matter, in determining whether a complaint states a cause of action sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "'[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements'" are all disregarded. *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The plaintiff's right to relief must be more than speculative; it must rise to the level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim meets the "plausibility" standard only if the factual allegations permit the Court to "'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Because Vaswani's RICO claims are premised on mail and wire fraud (*see* Compl. ¶ 115), its allegations must be pled with particularity pursuant to the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Grant v. Turner*, 2010 WL 4004719, at *2 (D.N.J. Oct. 12, 2010) (Brown, J.) (applying Rule 9(b) to federal RICO claims premised on mail and wire fraud). Under that standard, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004)).

15

Vaswani has asserted claims under 18 U.S.C. § 1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate and foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," and 18 U.S.C. § 1962(d), which prohibits any person from "conspir[ing] to violate" § 1962.  To assert a claim under 18 U.S.C. § 1962(c), the plaintiff must allege: (1) the existence of an enterprise impacting interstate commerce; (2) that the defendant was associated with the enterprise; (3) that the defendant directly or indirectly participated in the conduct of the enterprise's affairs; and (4) that the defendant participated through a "pattern of racketeering activity," which must "include the allegation of at least two predicate acts."  A-*Valey Engineers, Inc. v. Bd. of Chosen Freeholders of Cty. of Camden*, 106 F. Supp. 2d 711, 715 (D.N.J. 2000); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity") (quoting *Lum,* 361 F.3d at 223).

### a. Vaswani has Failed to Sufficiently Allege a "Pattern" of Racketeering Activity

The moving defendants first argue that Vaswani has failed to sufficiently allege a "pattern of racketeering activity" comprised of "at least two predicate acts."  It is well settled that a "pattern of racketeering activity" requires "more than commission of the requisite number of predicate acts"; rather, the plaintiff must demonstrate "'that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity.'"  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991) (quoting *H.J. Inc. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)).  In addition to relatedness of the acts and continuity of the criminal activity, courts in the Third Circuit have considered a number of other factors in assessing the "pattern" element, including "the number of unlawful acts, the length of time over

16

which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fid. Union Bank/First Nat. State*, 832 F.2d 36, 39 (3d Cir. 1987). While "a single fraudulent scheme can give rise to RICO liability, when that scheme is short-lived and directed at a limited number of people," there must be "some further indication that the defendant's fraudulent activities are likely to continue." *Kehr Packages, Inc.*, 926 F.2d at 1413.

Here, the complaint alleges two predicate acts—mail and wire fraud under §§ 1341 and 1343—which occurred for the purpose of inducing Vaswani into placing a $450,000 order for PPE and remitting the required funds. (Compl. ¶ 115.) It also alleges, but does not separately identify as predicate acts, misrepresentations in connection with the parties' negotiations for the return of the wired funds. (*See id.* ¶ 37.) The allegations regarding the breadth and continuity of these predicate acts, however, fall short of demonstrating a "pattern" for purposes of RICO. For example, although the complaint contains general allegations of continued misconduct (*id.* ¶¶ 112, 121-24), the specific allegations in the complaint reveal that the purported scheme was relatively short-lived, spanning over a period of only five months and ending in December 2020 when Vaswani filed the instant lawsuit (*see id.* ¶¶ 16, 26). Furthermore, the complaint identifies only Vaswani as the victim of this purported scheme; its barebones allegation that "[o]ther similar activities known to Vaswani . . . have been perpetrated upon Unified Safe Guard . . . with al[l] these identified Defendants as the center of the fraudulent operations" (*id.* ¶ 122), without any detail regarding these activities, is insufficient given the particularity required by Rule 9(a). *See, e.g., Briksza v. Maloney*, 2009 WL 1767594, *25 (D.N.J. June 19, 2009) (Wolfson, J) (plaintiff must identify the "who, what, when and where details of the alleged fraud" to satisfy

17

Fed. R. Civ. P. 9(b)'s heightened pleading requirements (internal citation and quotation omitted)).

Because Vaswani has merely alleged an isolated incident of fraudulent conduct against a single victim and not a continuous "pattern" of racketeering activity, its RICO claims are subject to dismissal. *See Kehr*, 926 F.2d at 1417 (complaint failed to allege a "pattern" of racketeering activity where allegations involved "a short-term attempt to force a single entity into bankruptcy," and "containe[d] no additional threat of continued criminal activity"); *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 303 (D.N.J. 2007) (no "pattern" of racketeering activity where complaint alleged "an isolated incident of fraud").

### b. Vaswani's Allegations also Fail to Demonstrate the Existence of an "Enterprise"

RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Vaswani seeks to allege an "association-in-fact" enterprise. (*See* Compl. ¶ 108; *see also* Opp. Br. at 15.) To state a RICO association-in-fact enterprise, the plaintiff must merely demonstrate the existence of a "continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 944 (2009). In applying that standard, the Third Circuit has found that "the RICO statute defines an 'enterprise' broadly, such that the 'enterprise' element of a Section 1962(c) claim can be satisfied by showing a 'structure,' that is, a common 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 368 (quoting *Boyle*, 556 U.S. at 945); *see Virginia Sur. Co. v. Macedo*, 2011 WL 1769858, at *13 (D.N.J. May 6, 2011) (Brown. J.) (recognizing that "the Supreme Court abandoned strict structural requirements in *Boyle*").

18

But even under the relatively low threshold established in *Boyle,* the complaint falls short.  It generally alleges an enterprise consisting of "[Manjunathamurthy], individually and through Lucidient, Castillo, individually and through Powerfirm, and Shankar, individual[ly] and through Fairmacs Group," which "functioned as a continuing unit" and had the "shared objective . . . to fraudulently divert Vaswani's funds to their own benefit and to divide those funds amongst themselves."  (Compl. ¶¶ 108, 119.)  It also alleges that the members "communicated among themselves and with [Vaswani] in furtherance of the scheme to defraud." (*Id.* ¶ 116.)  All of this parrots the requisite elements of an association-in-fact enterprise, but in the end amounts to precisely the legal conclusions and conclusory statements that doom sufficiency under the 12(b)(6) standard.  The allegations describe schemers, but fail to demonstrate plausibly with facts how the purported enterprise's members relate to and function with each other such that they form a definitive unit.  *See Aguilar v. Ken's Marine & Oil Serv., Inc.*, 2017 WL 2312358, at *2 (D.N.J. May 25, 2017) (Arleo, J.) (plaintiffs failed to allege association-in-fact enterprise in light of "bare recitation of the elements of a RICO enterprise, coupled with conclusory statements regarding the enterprise's existence); *see also Leeder v. Feinstein*, 2019 WL 2710794, at *9 (D.N.J. June 28, 2019) (Martinotti, J.) (complaint was insufficient to plead association-in-fact enterprise, where only allegation regarding enterprise's structure was "group's conspiracy to perform the underlying criminal offenses").

In short, the allegations in the complaint do not demonstrate structure and longevity, *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 368, and so fail to demonstrate the "most basic requirement of an association-in-fact enterprise: 'that the components function as a unit, that they be put together to form a whole.'"  *N.V.E., Inc. v. Palmeroni*, 2015 WL 13649814, at *6 (D.N.J.

19

Feb. 23, 2015) (Arleo, J.) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 374)). This defect forms a separate basis for dismissal of Vaswani's RICO claims.[12]

IV. **Conclusion**

For the foregoing reasons, the moving defendants' motion (D.E. 20) is denied as to the threshold jurisdictional challenge but granted as to the RICO causes of action. An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: March 22, 2022

---

[12] Having determined that the RICO causes of action are woefully deficient, the Court finds it unlikely that any amendment would salvage them. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002) (leave to amend need not be granted where amendment "would be inequitable or futile"). Although Vaswani does not seek leave to amend its complaint in connection with the instant motion, the Court notes for completeness that any future motion for leave to amend will be analyzed with great scrutiny.