<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VASWANI, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> NAGACHETAN BANGALORE MANJUNATHAMURTHY; UDAY SHANKAR; FAIRMACS GROUP; FAIRMACS SHIPPING & TRANSPORT SERVICES, PVT, LTD.; DRAFT CARGOWAY INDIA, PVT, LTD.; SREENATH RAJENDHRANATH; RADHIKA RAO; LUCIDIENT LIMITED; VISIOLUCID TECHNOSOFT, PVT, LTD; VISIO INGENII, LTD.; NANJUNDAPPA MADHUSUDHAN; POWERFIRM VENTURES INTERNATIONAL, INC.; JOANN CASTILLO; and SUNIL BUVA, <br><br> *Defendants*. | Civil No.: 20-cv-20288 (KSH) (CLW) <br><br><br><br><br> <u>OPINION</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.     Introduction**

Vaswani initiated this lawsuit against more than a dozen individual and institutional defendants after it allegedly fell victim to a fraudulent personal protective equipment ("PPE") scheme during the COVID-19 pandemic.  Defendant Nagachetan Bangalore Manjunathamurthy ("Bangalore") did not answer the complaint or otherwise respond in this matter, and Vaswani has now moved (D.E. 78) for entry of default judgment against him pursuant to Fed. R. Civ. P. 55(b)(2).[1]  For the reasons that follow, Vaswani's motion will be granted in part and denied in part.

---

[1] As will become clear, the other named defendants have been dismissed from this action.  (*See* D.E. 61, 70, 77.)

## II.    Background

The complaint alleges as follows.  (D.E. 1, Compl.)  Plaintiff Vaswani designs, manufactures, and installs furniture, fixtures, and displays for retail stores throughout the United States.  (*Id.* ¶ 14.)  In July 2020, a third party introduced Vaswani to defendant Uday Shanker, who represented that he and his companies[2] could acquire large quantities of PPE.  (*Id.* ¶¶ 15-17.)  The next month, Vaswani decided to purchase 60,000 boxes of gloves from Shankar at a total cost of $450,000.  (*Id.* ¶ 19.)  Shankar, who facilitated the sale, informed Vaswani that 30% of the funds (or $135,000) would be due on the order date and the remaining 70% (or $315,000) would be due upon verification of quality and confirmation of shipment readiness.  (*Id.* ¶ 20.)

On August 21, 2020, Vaswani placed its order and made the initial $135,000 payment. (*Id.* ¶ 22.)  Approximately six weeks later, on October 8, 2020, Shankar sent Vaswani an inspection certificate from a company called SGS, which confirmed that the PPE was properly identified and ready for shipment.  (*Id.* ¶ 25.)  Accordingly, on October 21, 2020, Vaswani paid the remaining $315,000 balance.  (*Id.* ¶ 26.)

On November 2, 2020, Shankar notified Vaswani that its order was unable to ship out because a "typhoon had reached the port."  (*Id.* ¶¶ 27-28.)  Approximately two weeks later, Shankar sent Vaswani a bill of lading for its order which was missing several "necessary details," including the order's container number.  (*Id.* ¶ 29.)  When Vaswani "pressed for details" regarding the bill of lading, it was contacted by Shankar's associate named Arun, who indicated that he would provide a replacement bill of lading because Shankar had "COVID issues."  (*Id.* ¶

---

[2] The complaint alleges that Shankar worked for institutional defendants owned and/or operated by individual defendant Sreenath Rajendhranath:  Fairmacs Group, Fairmacs Shipping & Transport Services, Pvt. Ltd., and Draft Cargoways India, Pvt. Ltd. (collectively, with Shankar and Rajendhranath, the "Fairmacs defendants").  (*Id.* ¶¶ 7-9.)

30.)  Arun sent the replacement bill of lading on November 21, which again was missing certain key information.  (*Id.*)

On November 24, 2020, Vaswani became suspicious and decided to contact SGS directly.  (*Id.* ¶ 31.)  Two days later, SGS informed Vaswani that the inspection certificate it had received from Shankar was "fraudulent and of no value."  (*Id.* ¶ 32.)  When Vaswani confronted Shankar, he stated that he was merely an intermediary and that the ordered PPE had been procured by defendant Lucident Limited ("Lucident") through its director, defendant Bangalore.[3]  (*Id.* ¶ 33.)  Bangalore promised to void the transaction and to return Vaswani's money with the cooperation of defendant Powerfirm Ventures International, Inc. ("Powerfirm"), which was allegedly "the holder of the funds."  (*Id.* ¶ 35.)

In early December 2020, Vaswani engaged in "multiple discussions, texts and emails" with Powefirm's director, defendant Joann Castillo, who admitted that Shankar's SGS certificate was false.  (*Id.* ¶¶ 35-36.)  Vaswani, Castillo, and Bangalore agreed to "enter into a document which would cause the return of Vaswani's funds."  (*Id.* ¶ 37.)  As time passed, Castillo and Bangalore repeatedly assured Vaswani that it would receive a refund, but they never followed through on their promises.  (*Id.*)  Eventually, Bangalore blamed the scheme on another individual, defendant Sunil Buva, who he claimed was "the person who was handling the whole operation."  (*Id.* ¶ 38.)

---

[3] The complaint alleges that Lucident and two other companies, defendants Visiolucid Technosoft, Pvt., Ltd. ("Visiolucid") and Visio Ingenii, Ltd. ("Visio") are owned and or/operated by Bangalore and defendants Radhika Rao and Nanjundappa Madhusudhan.  (*Id.* ¶ 34.)

Vaswani never received a refund as promised, and the instant lawsuit followed.[4]   (*Id.* ¶¶ 39-40.)   On December 24, 2020, Vaswani sued the Fairmacs defendants, Bangalore, Rao, Madhusudhan, Lucidient, Visiolucid, Visio, Buva, Castillo, and Powerfirm alleging causes of action for breach of contract (Count I); piercing of the corporate veil (Count II); conversion (Count III); consumer fraud (Count IV); violations of New Jersey's commercial code (Count V); fraud and conspiracy to commit fraud (Count VI); violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO") (Count VII); and conspiracy to violate RICO (Count VIII).   (D.E. 1.)   Vaswani served the Fairmacs defendants with the summons and complaint on January 19, 2021, which they answered on February 19, 2021.   (D.E. 4, 5.)   With Judge Waldor's permission, Vaswani served Bangalore, Lucidient, Visiolucid, Visio, Buva, Castillo, and Powerfirm via email on April 22, 2021.[5]   (D.E. 10, 13. 15.)

On June 8, 2021, the Fairmacs defendants moved to dismiss the claims against them for lack of jurisdiction or, alternatively, to dismiss Counts VII and VIII under Rules 8(a), 9(a), and 12(b)(6).   (D.E. 20.)   Two days later, the clerk entered default against Bangalore, Lucidient, Visiolucid, Visio, Buva, Castillo, and Powerfirm.   (D.E. 22.)

On March 22, 2022, the Court granted in part and denied in part the Fairmacs defendants' motion to dismiss.   (D.E. 48, 49.)   Four months later, Vaswani and the Fairmacs defendants reached a settlement and Vaswani agreed to dismiss the claims against them with prejudice.

---

[4] As discussed further, *infra*, Bangalore eventually returned $42,000 of the $450,000 purchase price.   (*See* D.E. 78-1, Nihalani Decl. ¶ 28.)

[5] Judge Waldor denied without prejudice Vaswani's request to serve defendants Rao and Madhusudhan via alternative means but allowed Vaswani 14 days to "provide the Court with additional documentation supporting its request" as to those defendants.   (*See* D.E. 13 at 10.) Vaswani did not file any such documentation.   On February 15, 2023, Vaswani voluntarily dismissed its claims against Rao and Madhusudhan without prejudice.   (D.E. 69, 70.)

(D.E. 60, 61.)  As the remaining defendants had still not appeared, Judge Waldor ordered

Vaswani to move for default judgment against them by September 6, 2022.  (D.E. 62, 63.)

      Vaswani initially moved for default judgment on August 29, 2022, but the Court denied

the motion without prejudice on grounds that Vaswani had, *inter alia*, failed to establish personal

jurisdiction over each defaulting defendant and to adequately support its request for damages.

(D.E. 64, 71.)  On May 23, 2023, Vaswani voluntarily dismissed its claims against Lucidient,

Visiolucid, Visio, Buva, Castillo, and Powerfirm without prejudice.  (D.E. 76, 77.)  The next

day, Vaswani filed the instant motion for default judgment against Bangalore only.  (D.E. 78.)

      In its motion, Vaswani asks the Court to find Bangalore liable under Count IV of the

complaint for violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, *et. seq.* (the

"NJCFA"), and seeks treble damages, attorneys' fees, and costs.  It relies on a moving brief

(D.E. 78-18, Mov. Br.); a declaration authored by Vaswani's CFO, Amit Nihalani (D.E. 78-1,

Nihalani. Decl.); a certification of counsel (D.E. 78-17, Baldinger Cert.); and supporting

exhibits.

## III.  Discussion

### A.  Legal Standard

      The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly

served defendant who does not file a timely responsive pleading.  Whether to grant a motion for

default judgment is "largely a matter of judicial discretion."  *Chanel, Inc. v. Gordashevsky*, 558

F. Supp. 2d 532, 535 (D.N.J. 2008) (Kugler, J.).  However, "that discretion is not without limits,"

and it is preferred that "cases be disposed of on the merits whenever practicable."  *Hritz v. Woma

Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  Accordingly, before entering default judgment, the

Court must determine "(1) whether the party seeking default judgment produced sufficient proof

of valid service and evidence of jurisdiction, and (2) whether the unchallenged facts present a sufficient cause of action." *Wilton Reassurance Life Co. of New York v. Engelhardt*, 2023 WL 4864296, at *2 (D.N.J. July 31, 2023) (Vazquez, J.). If those threshold requirements are satisfied, the Court must then "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (Ackerman, J.) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### B. Default Judgment Analysis

#### 1. Service and Jurisdiction

The Court is satisfied that Vaswani has met the threshold requirements for entry of default judgment.

First, Bangalore was properly served with the complaint via email pursuant to Judge Waldor's April 19, 2021 opinion and order authorizing alternative service of process under Fed. R. Civ. P. 4(f)(3). (D.E. 13, 15.)

Second, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the complaint alleges that there is complete diversity of citizenship and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1, 3-13.) As for personal jurisdiction, the complaint alleges that Bangalore is a citizen of India with residences in India and England. (*Id.* ¶ 4.) Vaswani appears to concede the absence of general jurisdiction and instead argues that specific jurisdiction exists, which requires the plaintiff to show that: (1) the defendant purposefully directed its activities at the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial

justice. *O'Connor v. Sandylane Hotel Co. Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). "The Third

Circuit has, however, outlined a more targeted test for determining whether a court may exercise

specific jurisdiction over nonresident defendants who allegedly commit an intentional tort

outside of the forum." *Lithia Ramsey-T, LLC v. City Line Auto Sales, LLC*, 2023 WL 1883355,

at *6 (D.N.J. Feb. 9, 2023) (McNulty, J.).  That test, known as the *Calder* "effects test," requires

the following:

> First, the defendant must have committed an intentional tort. Second, the plaintiff
> must have felt the brunt of the harm caused by that tort in the forum, such that the
> forum can be said to be the focal point of the harm suffered by the plaintiff as a
> result of the tort. Third, the defendant must have expressly aimed his tortious
> conduct at the forum, such that the forum can be said to be the focal point of the
> tortious activity.

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998).

Vaswani argues that the *Calder* effects test applies here.  The Court recognizes that

"NJFCA claims do not necessarily assert an intentional tort claim." *Hanson v. G&G*

*Motorcycles, Inc.*, 2022 WL 617068, at *4 (D.N.J. Mar. 2, 2022) (Shipp. J.); *see Katz v. Live*

*Nation, Inc.*, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010) (Cooper, J.) (recognizing that

NJCFA claims asserting "affirmative acts" such as misrepresentations and unconscionable

commercial practices do not require a showing of intent).  However, Vaswani's complaint "can

be read to include a claim for an intentional tort under the NJCFA," *Goldstein v. Berkowitz*, 2011

WL 1043235, at *8 (D.N.J. Mar. 18, 2011) (Wolfson, J.)," insofar as it alleges that Bangalore

and his business entities were at "the center of [the] fraudulent PPE transactions."  (Compl. ¶

34.)  That allegation is supported by the Nihalani declaration and its supporting exhibits, which

demonstrate that: (i) Shankar, who made affirmative misrepresentations and issued false

documents to Vaswani, was acting as an agent for Bangalore and his companies; (ii) Bangalore

falsely promised that Vaswani's funds would be returned and even executed a resolution

agreement to that effect; and (iii) one of Bangalore's companies sent Vaswani a falsified bank statement indicating that the requested funds had been returned.  (Nihalani Decl. ¶¶ 20-24, Exs. K, L, M, N.).  Accordingly, the first element is satisfied.

The second and third elements are also satisfied.  Vaswani, a New Jersey entity with a substantial employee base in the state, suffered its harm primarily in the forum.  (*See* Compl.  ¶ 3; Nihalani Decl. ¶ 8.)  Moreover, a defendant's conduct is "expressly aimed" at the forum if the plaintiff can demonstrate that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  *Marten v. Godwin*, 499 F.3d 290, 297-98 (3d Cir. 2007) (quoting *IMO Indus.*, 155 F.3d at 266).  Attached to the Nihalani declaration is a resolution agreement signed by Bangalore, in which he (i) recognized that Vaswani is a New Jersey entity doing business in the state and (ii) agreed to litigate in New Jersey state or federal court should Vaswani fail to receive a refund as contemplated in the agreement.  (Nihalani Decl. Ex. M.)  As such, Bangalore knew that Vaswani would suffer the brunt of the harm caused by his affirmative misrepresentations and other unconscionable business practices in New Jersey.

## 2.  Legitimate Cause of Action

Having determined that the threshold requirements for default judgment are satisfied, the Court assesses whether Vaswani has asserted a legitimate cause of action under the NJCFA—the only count of the complaint for which Vaswani seeks default judgment.  (*See* Mov. Br. at 13-16.) As a result of Bangalore's default, the Court will accept the allegations in the complaint as true except those that relate to damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

To assert a claim under the NJCFA, which is subject to the particularity requirement of Rule 9(b), a plaintiff must allege three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.[6]  *See Kaplan v. Gen. Elec. Co.*, 2023 WL 4288157, at *7 (D.N.J. June 30, 2023) (Martinotti, J.).  To satisfy the first prong, the plaintiff must demonstrate that the defendant engaged in an "unlawful practice," which is defined in the NJCFA to include "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate[.]"  N.J.S.A. 56:8-2.  Courts have derived three broad categories of unlawful conduct from that definition: affirmative acts (which include unconscionable commercial practices, false promises, and misrepresentations), knowing omissions, and regulatory violations.  *Kaplan*, 2023 WL 4288157, at *7.

Vaswani has sufficiently alleged all three elements of a NJCFA claim and has provided the Court with documentary evidence in support.  The complaint alleges that Vaswani demanded a refund for the PPE order it never received.  In turn, Bangalore repeatedly assured Vaswani that he would void the order and issue a refund, and even agreed to execute a resolution agreement to that effect, but he failed to follow through on his promises.  (Compl. ¶¶ 33-40.)  Those allegations are buttressed by the exhibits attached to the Nihalani declaration, including: (i) Bangalore's email correspondences, which document his misrepresentations to Vaswani; (ii) the

---

[6] The NJCFA has been interpreted "to afford protection to corporate and commercial entities who purchase goods and services for use in their business operations."  *See Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 590 (Law. Div. 2000).

resolution agreement signed by both Nihalani and Bangalore, in which Bangalore falsely promised to return the remaining $408,000; and (iii) a false bank statement issued by one of Bangalore's companies indicating that the funds had already been returned to Vaswani. (Nihalani Decl. Exs. K, L, M, N.)  Accordingly, Vaswani has shown that Bangalore misrepresented the circumstances surrounding his refund of the undelivered PPE, resulting in an ascertainable loss.

### 3.   Default Judgment Factors

Having determined that Vaswani has alleged a legitimate NJCFA claim, the Court must weigh (i) the existence of a meritorious defense; (ii) the prejudice Vaswani will suffer if default judgment is not entered; and (iii) Bangalore's culpability in the default.  *See Emcasco*, 834 F.2d at 74.

First, "it is axiomatic that the Court cannot consider [Bangalore's] defenses because [he has] failed to respond to this action." *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, 2018 WL 1027446, at *3 (D.N.J. Feb. 23, 2018) (Hillman, J.).  Because the Court "has no duty to construct a defense" for him, the first factor weights in favor of default judgment. *Tidman v. Eminence Hardscapes, LLC*, 2023 WL 3224594, at *12 (D.N.J. May 3, 2023) (Bumb, J.) (quoting *New Jersey Bldg. Laborers' Statewide Pension Fund & Trustees Thereof v. Pulaski Const.*, 2014 WL 793563, at *3 (D.N.J. Feb. 26, 2014) (Pisano, J.)).

Second, Vaswani will suffer prejudice if default judgment is not entered.  As explained *supra*, the non-settling defendants have all been dismissed from this action.  According to the Nihalani declaration, Bangalore's entities (defendants Visio, Visiolucid, and Lucidient) are all shell companies formed by Bangalore to advance his fraudulent activities and are now defunct.

(Nihalani Decl. ¶ 5.)  Bangalore's main co-conspirator, defendant Castillo,[7] has recently passed away, and defendant Buva's sole link to the litigation was through Castillo.  (*Id.* ¶¶ 3, 6, Ex. A.)  Accordingly, Bangalore's failure to participate in this action leaves Vaswani "with no other means to vindicate [its] claims." *Qu Wang*, 2018 WL 1027446, at *3.

Finally, nothing in the record suggests that anything other than willful negligence caused Bangalore to default; to the contrary, Vaswani has cited a factually analogous case in this district where Judge Martinotti recently entered default judgment against Bangalore.  *See Vaswani, Inc. v. Atl. Enterprises Ltd*, 2023 WL 4740905, at *13 (D.N.J. July 25, 2023).  Accordingly, the Court may infer Bangalore's culpability from his default.  *See Zuniga v. AM Framing LLC*, 2022 WL 203234, at *4 (D.N.J. Jan. 24, 2022) (McNulty, J.).

## IV. Damages

Having determined that default judgment is appropriate, the Court addresses Vaswani's request that the Court award $1,118,000 in treble damages and $97,130.95 in attorneys' fees and costs pursuant to N.J.S.A. 56:8-19, which requires the Court to "award threefold the damages sustained by" a person aggrieved by a NJCFA violation, as well as "reasonable attorneys' fees, filing fees and reasonable costs of suit."

Beginning with treble damages, Vaswani lost $450,000 through defendants' PPE scheme but later recouped $232,000.  (*See* Nihalani Decl. ¶ 28 (indicating that Vaswani received $42,000 from Bangalore and another $190,000 "through these legal proceedings").)  Accordingly, Vaswani's ascertainable loss is $218,000, and the Court will award treble damages in the amount

---

[7] Prior to Castillo's death, she was indicted in the Philippines for her fraudulent conduct and a warrant was issued for her arrest.  (Nihalani Decl. ¶ 3, Ex. B.)

of \$654,000.[8]  *See White v. Samsung Elecs. Am., Inc.*, 2019 WL 8886485, at *3 (D.N.J. Aug. 21, 2019) (Arleo, J.) (recognizing that "out of pocket loss" constitutes ascertainable loss, and that such loss may include entire purchase price if purchaser did not receive a refund).

Vaswani asks the Court to award attorneys' fees for 184.8 hours of work performed throughout the course of this litigation—including work that was not directly geared toward Bangalore.  Courts have cautioned that a fee award under the NJCFA "should not be apportioned according to percentage of liability," and that a finding to the contrary "would dilute the significant policy underpinnings of the fee provision of the legislation."  *Cogar v. Monmouth Toyota*, 331 N.J. Super. 197, 211 (App. Div. 2000).  Albeit hours devoted to litigating claims against one defendant generally should not be attributed to another, hours "fairly devoted to one defendant that also support the claims against other defendants are compensable."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990) (internal citations and quotations omitted).  Here, the complaint alleges—and the record evidence supports—that Bangalore was at the center of the fraudulent PPE scheme.  (*See* Compl. ¶ 34; *see also* Nihalani Decl. Exs. K, L, M, N.)  Accordingly, the Court will not limit the fee award on allocation grounds.

Vaswani seeks \$94,700 in fees for work performed by two attorneys at hourly rates ranging from \$450 to \$600.  As Vaswani's counsel has certified that those rates are consistent with the market rate for similarly situated attorneys, and Bangalore has not challenged them, the Court accepts the requested rates as reasonable.  *See Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (upholding district court's award of fees at requested

---

[8] In arriving at its proposed treble damages award, Vaswani tripled its initial loss (\$450,000) and then subtracted its refunds (\$232,000) from that larger figure.  (*See* Nihalani Decl. ¶ 28.)  However, Vaswani has not provided any support for its position that its "ascertainable loss" is \$450,000, and the Court need not accept Vaswani's damages calculations as true.  *See Comdyne I, Inc.*, 908 F.2d at 1149.

rate, where plaintiff made *prima facie* showing that requested rate "constitute[d] a reasonable market rate for the essential character and complexity of the legal services rendered," and defendant failed to challenge the requested rate) (internal citations and quotations omitted). However, Vaswani improperly seeks fees it incurred as a result of the Court's February 27, 2023 order denying its original motion for default judgment.[9] *See Young v. Smith*, 269 F. Supp. 3d 251 (M.D. Pa. 2017), *aff'd*, 905 F.3d 229 (3d Cir. 2018) (denying fee application where attorney billed for time necessitated by her own mistakes). Accordingly, the Court will reduce the requested award by $7,680, which reflects 12.8 hours of work performed at counsel's highest hourly rate.

Finally, Vaswani seeks $2,430.95 in costs for filing and service fees, as well as telephone, photocopying, and postage expenses. The Court finds that these costs—incurred over the course of nearly three years of litigation—are reasonable and will grant Vaswani's request for the full amount sought.

## V.      Conclusion

For the foregoing reasons, Vaswani's motion (D.E. 78) is granted in part and denied in part. An appropriate order and judgment will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: August 16, 2023

---

[9] The improper entries are as follows: (i) 0.4 hours on February 28, 2023 to review the Court's order denying default judgment; (ii) 0.5 hours on March 8, 2023 to draft an extension request for its revised default judgment motion; (iii) 0.2 hours on March 9, 2023 to review the Court's order granting its extension request; and (iv) a combined 11.7 hours on May 19, May 22, and May 23, 2023 to, *inter alia*, conduct research and revise its original default judgment papers. (Baldinger Cert. ¶ 4 at 10-11.)